21-823
*335-7 LLC v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of March, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> BARRINGTON D. PARKER,
> BETH ROBINSON,
> *Circuit Judges.*

---

335-7 LLC, FGP 309 LLC, 226 LLC, 431 HOLDING LLC, AND 699 VENTURE CORP.,

   *Plaintiffs-Appellants*,

312 WEST 93RD STREET ASSOCIATES, LLC,
  *Proposed-Intervenor-Plaintiff,*

  v.                 21-823

CITY OF NEW YORK, NEW YORK CITY RENT GUIDELINES BOARD, RUTHANNE VISNAUSKAS, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW YORK STATE DIVISION OF HOMES AND COMMUNITY RENEWAL,

   *Defendants-Appellees*,

COMMUNITY VOICES HEARD (CVH), N.Y. TENANTS AND NEIGHBORS (T&N),

1

*Intervenors-Defendants-Appellees.*

---

BRIAN W. BARNES, *Copper & Kirk, PLLC,* Washington D.C. (Charles J. Cooper, David H. Thompson, Peter A. Patterson, *Copper & Kirk, PLLC,* Washington D.C.; Todd A. Rose, Paul Coppe, *Rose & Rose,* New York, NY, *on the brief*) for *Plaintiffs-Appellants*.

ESTER MURDUKHAYEVA, *Assistant Solicitor General* (Barbara D. Underwood, *Solicitor General*, Steven C. Wu, *Deputy Solicitor General*, *on the brief*), *for* Letitia James, *Attorney General of the State of New York*, New York, NY for Commissioner *RuthAnne Visnauskas*.

JESSE A. TOWNSEND, *of Counsel* (Richard Dearing, Claude S. Platton, *of Counsel*, *on the brief*), *for* Georgia M. Pestana, *Corporation Counsel* for *City of New York* and *New York City Rent Guidelines Board*.

MICHAEL DUKE, *Selendy & Gay PLLC,* New York, NY (Caitlin J. Halligan, Sean P. Baldwin, Michael Duke, Babak Ghafarzade, Sophie Lipman, Samuel Breidbart, *Selendy & Gay PLLC,* New York, NY; Judith Goldner, *Attorney in Charge,* Edward Josephson, *Supervising Attorney,* The Legal Aid Society, Employment Law Unit, New York, NY, *on the brief*) for *Community Voices Heard* and *N.Y. Tenants and Neighbors*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants (collectively, the "Landlords") own apartment buildings subject to the New York City Rent Stabilization Law ("RSL"). The RSL was amended in 2019 by the Housing Stability and Tenant Protection Act of 2019 (the "HSTPA"). The Landlords allege that

the HSTPA effected, both facially and as-applied, a taking of their property. The district court dismissed these claims. We now affirm that decision and conclude that the majority of the Landlords' arguments are foreclosed by our recent decisions in *Community Housing Improvement Program v. City of New York*, No. 20-3366, 2023 WL 1769666 (2d Cir. Feb. 6, 2023) and *74 Pinehurst LLC v. New York,* No. 21-467, 2023 WL 1769678 (2d Cir. Feb. 6, 2023). We write primarily for the parties and assume a familiarity with the facts and procedural history of the case as well as the issues on appeal.[1]

### I.  FACIAL CLAIMS

To prevail on a facial challenge, the plaintiff must "establish that no set of circumstances exists under which the [challenged] Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).[2] In other words, the plaintiff must show that the statute "is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Rep. Party*, 552 U.S. 442, 449 (2008). The Landlords claim that the RSL effects, facially, both a physical and a regulatory taking.

Applying the *Salerno* facial-challenge standard in *Community Housing*, we affirmed the district court's holdings that plaintiffs had failed to plausibly allege that RSL effected, facially, a physical or regulatory taking. First, we concluded that "that no provision of the RSL effects, facially, a physical occupation of the Landlords' properties." *Community Housing*, 2023 WL 1769666, at *7. We noted that, unlike in *Cedar Point*, where the property at issue was closed to

---

[1] A history of New York City's rent control policies can be found at *Community Housing*, 2023 WL 1769666, at *1–*3.

[2] The Landlords argue that *Salerno* no longer provides the correct standard for facial challenges. We rejected this argument in *Community Housing*, concluding that the Supreme Court has not relaxed the *Salerno* standard. *Community Housing*, 2023 WL 1769666, at *5–*6. In addition, we stated that "in the rent stabilization context, the regulatory regime at issue has both persisted and been adjusted over time, reflecting finely tuned, legislative judgments, [and so] we must exercise caution in entertaining facial challenges." *Id.* at *6.

3

the public, in the landlord-tenant context, "the Landlords voluntarily invited third parties to use their properties, and as the Court explained in *Cedar Point*, regulations concerning such properties are 'readily distinguishable' from those compelling invasions of properties closed to the public." *Id.* at *7 (quoting *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2077 (2021)). *Community Housing* controls here and we thus conclude that the Landlords have not plausibly alleged a facial physical taking.

Second, in *Community Housing*, we concluded that the RSL did not effect, facially, a regulatory taking. In that case, we noted that the law undoubtedly has different economic effects on different landlords, and different landlords have greatly varying expectations. Thus, we held "[w]e cannot make that analysis on a groupwide basis in a case where, as here, the challenged statute has been in place for half a century, and most, if not all, current landlords purchased their properties knowing they would be subject to the RSL. Given the RSL's ever-changing requirements, no property owner could reasonably expect the continuation of any particular combination of RSL provisions." *Id.* at *10. Our holding and reasoning in *Community Housing* also applies here and, consequently, we hold that the Landlords have not plausibly alleged that the RSL effects, facially, a regulatory taking. Because the Landlords have plausibly alleged that the RSL effects, facially, neither a physical nor a regulatory taking, we affirm the district court's dismissal of their facial takings claims.

## II. AS-APPLIED PHYSICAL TAKING CLAIM

*Community Housing* and *Pinehurst* also analyzed as-applied physical takings under the RSL and their reasoning controls here. They require us to affirm the district court's dismissal of the Landlords' as-applied physical takings claim.

4

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amends. V, XIV, § 1. That requirement applies to all physical appropriations of property by the government. *See Horne v. Dep't of Agriculture*, 576 U.S. 350, 360 (2015). When the government effects a physical appropriation of private property for itself or another—whether by law, regulation, or another means—a *per se* physical taking has occurred. *Cedar Point*, 141 S. Ct. at 2071.

In *Pinehurst* and *Community Housing*, we held that the RSL cannot effect a physical taking because it does not "compel the Landlords 'to refrain in perpetuity from terminating a tenancy,'" *Pinehurst*, 2023 WL 1769678, at *2 (quoting *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 528 (1992)). Instead, the statute sets forth several bases on which a landlord may terminate a tenant's lease, such as for failing to pay rent, creating a nuisance, violating the lease, or using the property for illegal purposes. *See* 9 NYCRR § 2524.3; *see also Community Housing*, 2023 WL 1769666, at *8 (collecting cases). "It is well settled that limitations on the termination of a tenancy do not effect a taking so long as there is a possible route to an eviction." *Community Housing*, 2023 WL 1769666, at *8.

Here, the Landlords argue that the various routes to eviction are not easily accomplished or practical and thus Landlords cannot choose to "exit the market," *i.e.* convert their rent stabilized units to market rate units. In *Community Housing*, however, we stated that none of the provisions of the RSL that limit Landlords' control over tenancies "involve unconditional requirements imposed by the legislature. Landlords, instead, must adhere to these provisions only when certain conditions are met." *Id.* While it might be true, as the Landlords argue, that even after "an eviction, the tenant is just replaced with another rent-stabilized tenant at the same rent," Appellants' Br. at 22, the Supreme Court has held that limitations on the ability of Landlords to decide who their

5

incoming tenants are has "nothing to do with whether [a law or regulation] causes a physical taking." *Yee*, 503 U.S. at 530. In short, the fact that the law restricts a landlord's ability to profit by converting a rent stabilized unit to a market-rate unit does not effect a physical occupation of the property.

More broadly, the Landlords do not demonstrate that they attempted to use any of the available methods to exit the market or evict problematic tenants. Unless and until they do so, it is impossible for us to determine if the RSL effects an as-applied taking. We therefore affirm the district court's dismissal of the Landlords' as-applied physical taking claim.

### III. AS-APPLIED REGULATORY TAKING

Legislation effects a regulatory taking when it goes "too far" in restricting a landowner's ability to use his own property. *Horne*, 576 U.S. at 360; *Yee*, 503 U.S. at 529; *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). In determining whether a use restriction effects a taking, we apply the balancing test set out in *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104 (1978). *Penn Central* instructs courts to engage in a flexible, "ad hoc, factual inquir[y]" focused on "several factors that have particular significance." 438 U.S. at 124. Three of them are: (1) "the economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Id.*

#### A. RIPENESS

In the land-use context, generally, a claim "is not ripe until . . . the 'government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294 (2d Cir. 2022) (quoting *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of*

6

*Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 139 S. Ct. 2162 (2019)). Similarly, in the context of regulatory takings claims, the Supreme Court has held that ripeness requires following "reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620–21 (2001).

Here, the Landlords admit that they have not attempted to apply for any of the exemptions allowed by the RSL. Appellants' Br. at 40. As the district court concluded, their regulatory takings claims are therefore unripe because the conditions that the Landlords allege constitute an as-applied taking have not yet been finalized and could have been modified by the RGB. *Pinehurst*, 2023 WL 1769678, at *3; s*ee also Harmon v. Markus*, No. 08 Civ. 5511 (BSJ), 2010 WL 11530596, at *3 (S.D.N.Y. Mar. 1, 2010), *aff'd*, 412 F. App'x 420 (2d Cir. 2011) (concluding that landlords' Fifth Amendment challenge to the RSL was unripe because they had not filed for hardship exemptions). Thus, because the Landlords have not applied for an exemption, there has been no final decision and we cannot determine how the RSL might be applied to them.

The Landlords, however, argue that this conclusion is incorrect for several reasons. First, they point out that Plaintiff-Appellant FGP 309 LLC sold its building and can no longer apply for a hardship exemption and therefore has a fully ripened claim. This is incorrect. FGP's choice to sell it without applying for an exemption simply means that it never acted to ripen its claim and instead chose to sell the building to a willing buyer. We cannot know what the building's sale price would have been if FGP had applied for a hardship exemption and therefore cannot determine with certainty the economic impact of the regulation.

7

More broadly, the Landlords argue that the exemption process is characterized by "futility and delay," which exempts them from the finality requirement. Appellants' Br. at 41. The futility exemption, however, does not apply to this case. Unlike in other cases where we have found that a plaintiff had demonstrated futility, *see, e.g.*, *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014), the Landlords here have not, themselves, experienced any repetitive or otherwise unfair procedures. Instead, they argue in the abstract that the RGB's procedures are generally known to be inefficient and ineffective and that the exemptions would not address all of their concerns. These contentions are not sufficient to avoid the finality requirement. Especially given the ad-hoc nature of the regulatory takings analysis, it is necessary for us to know with clarity how precisely the RSL affects the Landlords. As it stands, we do not know how the RGB would have responded to requests for exemptions. We therefore affirm the district court's conclusion that the Landlords' claims are unripe.

## B. REGULATORY TAKINGS MERITS

Although we hold that the Landlords as-applied regulatory takings claims are not ripe, we briefly address the merits and conclude that the district court correctly determined that the Landlords did not state a plausible claim for a regulatory taking. First, aside from FGP, which alleges that its building sold for $925,000 less as a result of the RSL amendments, the other landlords do not discuss the specific economic impact of the law on their buildings. Regardless, as the Supreme Court has made clear, "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993). The lack of allegations about the economic impact of the RSL weighs against the conclusion that the Landlords have plausibly alleged a regulatory taking.

Next, the Landlords fail to demonstrate that the RSL interferes with their reasonable investment-backed expectations. As we stated in *Pinehurst*, any reasonable landlord involved in New York's rental market "would have anticipated their rental properties would be subject to regulations, and that those regulations in the RSL could change yet again." *Pinehurst*, 2023 WL 1769678, at *5. The Landlords thus cannot plausibly allege that the RSL interfered with their reasonable investment-backed expectations. This factor thus weighs against finding that the Landlords have plausibly alleged a regulatory taking.

Finally, we turn to the character of the regulation. The Supreme Court has instructed that in analyzing the "character" of the governmental action, courts should focus on the extent to which a regulation was "enacted solely for the benefit of private parties" as opposed to a legislative desire to serve "important public interests." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485–86 (1987). In *Pinehurst*, we noted that the RSL is part of a broader regulatory regime and that the legislature "has determined that the RSL is necessary to prevent 'serious threats to the public health, safety, and general welfare.'" *Pinehurst*, 2023 WL 1769678, at *6 (citing N.Y.C. Admin. Code § 26-501.) The existence of a broader regulatory regime weighs against finding a regulatory taking. After balancing the *Penn Central* factors, we conclude that even if their claims were ripe, the Landlords could not plausibly allege that the RSL effects a regulatory taking as applied to them.

## IV.  CONFISCATORY TAKING AND TAKING FOR NON-PUBLIC USE

We hold that the RSL does not effect a confiscatory taking. Confiscatory taking doctrine arises in the context of private companies that are required to provide public utilities and "creates its own set of questions under the Takings Clause of the Fifth Amendment." *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307 (1989). Although the Landlords analogize their situation under the

RSL to that of a public utility, they cite no case that has ever applied the confiscatory taking doctrine in the landlord-tenant context. We decline to expand the doctrine here and thus affirm the district court.

Finally, because we have found that the RSL has not effected a taking, it could not have effected a taking for a non-public use. We have considered the Landlords' remaining contentions and have found them to be without merit.

* * *

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk